E-FILED
Tuesday, 06 October, 2026 09:46:46 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **DAVID BROCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 25-cv-3174** |
| | ) | |
| **JON HALL, CHERYL CARLSON, DAVID MITCHELL, EDWARD ESCAMILLA, AND LATOYA HUGHES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court is Defendants' Motion to Dismiss (d/e 25) Plaintiff's First Amended Complaint. Because Plaintiff's First Amended Complaint (d/e 17) does not state a claim upon which relief can be granted, Defendants' Motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

Plaintiff was a Correctional Lieutenant employed by the Illinois Department of Corrections ("IDOC"). d/e 17, ¶ 3. Defendants were employed by IDOC: Defendant John Hall as an administrative

assistant, Defendant Cheryl Carlson as an administrative assistant, Defendant David Mitchell as the Pinckneyville Warden, Defendant Edward Escamilla as IDOC Chief of Investigations and Intelligence, and Defendant Latoya Hughes as Acting IDOC Director. Id. at ¶¶ 4-8. Carlson also served as a management representative for the employee review board convened for Brock's case. d/e 17, ¶ 24.

On June 15, 2023, Plaintiff deployed pepper spray on an inmate during a struggle to handcuff him. Id. at ¶ 10. IDOC policy dictates that force should only be used as a "last resort," or when "other means are unavailable or inadequate, and only to the degree reasonably necessary to achieve a permitted purpose." 20 Ill. Admin. Code 501.10 et seq.; d/e 9, p. 3. Plaintiff alleges that he complied with IDOC's policy on resort to force and chemical agent usage. He also alleges that "the administration acknowledged and understood" that he complied with the use of force policies. Id. at ¶ 21.

Plaintiff alleges that, nonetheless, Defendants all determined that Plaintiff needed to be heavily disciplined for utilizing pepper spray. Id. at ¶ 22. Plaintiff alleges that, because Defendants Hughes and Escamilla have thought throughout their IDOC tenure

that force should never be used against inmates, Defendants Hughes and Escamilla "have continually insisted that employees be seriously disciplined and discharged for actions that fully comply with [I]DOC's written policies." Id. at ¶ 23.

On November 22, 2023, Defendant Hall presided over an employee review board hearing to determine whether and how to discipline Plaintiff. Id. at ¶ 24. Plaintiff alleges that this hearing came "[a]s a result of the directives of Mitchell, Escamilla, and Hughes." Id. Plaintiff alleges that the Defendants knew at that time that Plaintiff complied with the use of force policies and that he reasonably relied upon those policies. Id. at ¶¶ 21, 24. Plaintiff alleges that Defendant Carlson "pushed for" Plaintiff's termination and that Defendant Hall "recommended" the same after the employee review board hearing convened to determine Plaintiff's discipline. Id. at ¶¶ 24-25. Plaintiff also alleges that Defendant Hall's recommendation was forwarded to Defendant Mitchell, who concurred and recommended Plaintiff's termination. Id. at ¶ 26.

On January 10, 2024, Plaintiff was notified of his termination effective that day. Id. at ¶ 27.

**B. Procedural Background**

On June 13, 2025, Plaintiff filed a one-Count Complaint against Defendants in this Court. See d/e 1. Plaintiff alleged that IDOC's use of force rules as applied to Plaintiff provided no notice or warning that his June 15, 2023 use of pepper spray was improper because Defendants did not apply IDOC's applicable use of force rules to him and instead applied "different unspoken and unwritten arbitrary rules" to him. Id. at ¶ 19. Plaintiff sued all five Defendants in their individual capacities, and also sued Defendants Mitchell, Escamilla, and Hughes in their official capacities for the limited purpose of obtaining equitable relief. Id. at ¶¶ 4-8.

On September 15, 2025, Defendants filed a Memorandum of Law in support of Motion to Dismiss (d/9). Defendants argued that the written use of force policy is not unconstitutionally vague and that Defendants did not apply any unwritten or unspoken policies in deciding to terminate Plaintiff. d/e, p. 3.

On October 13, 2025, Plaintiff filed a Response to Defendants' Motion to Dismiss (d/e 13). Notably, Plaintiff's Response alleged that the policy IDOC applied to him "effectively provides that any use of force [Defendants] are personally uncomfortable with against

an inmate subjects an employee to discipline." d/e 13, p. 1.

On April 13, 2026, the Court granted Defendants' Motion to Dismiss (d/e 16). For the documented use of force policy, the Court held that the policy was not unconstitutionally vague because Plaintiff had "fair notice" that pepper spray could not be used outside of specific circumstances. d/e 16, p. 9. For the alleged undocumented policy that led to Plaintiff's termination—that "any use of force they are personally uncomfortable with against an inmate subjects an employee to discipline"—the Court held that Plaintiff did not plead facts sufficient to raise his right to relief "above the speculative level[.]" Id. at p. 16 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

More specifically, the Court stated that Plaintiff did not allege specific facts to demonstrate the existence of a policy that employees are subject to discipline for any use of force that Defendants "are personally uncomfortable with." d/e 16, p. 11. For example, Plaintiff did not allege specific facts showing that any employees have actually been disciplined or discharged after applying Defendants' alleged unwritten policy that any use of force is grounds for the same. Id. at p. 12. Nor did Plaintiff allege

specific facts showing that any Defendants recommended Plaintiff's termination because of their alleged unwritten policy rather than a genuine belief that Brock violated the written use of force policy. Id. at 13. The absence of such allegations is notable because terminating Plaintiff based on a good faith belief that he violated the use of force policy would be "consistent with lawful conduct" as in McCauley. Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) (affirming dismissal of Plaintiff's claim where Defendants' alleged behavior was "just as consistent with lawful conduct as it is with wrongdoing").

On May 12, 2026, Plaintiff filed his First Amended Complaint (d/e 17). Plaintiff added several paragraphs describing the alleged policies of Illinois Governor J.B. Pritzker, including the newfound focus of "protecting inmates from any type of force, even when it is necessary and fully justified." d/e 17, ¶ 11. To support the existence of Governor Pritzker's alleged policy, Plaintiff provided quotes from a police union and an Illinois state representative (discussed in detail below). Id. at ¶¶ 12, 15. Plaintiff also added a paragraph stating that the "unwritten modifications" designed to shield inmates from any use of force have led to "a number of

officers being disciplined [] when their actions do not constitute a written violation of the use of force policies." Id. at ¶ 19.

On June 9, 2026, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint (d/e 25). Defendants argue that, as with the initial Complaint, the First Amended Complaint does not provide sufficiently detailed allegations to "connect the dots" between Plaintiff's termination and Defendants allegedly unwritten, unconstitutional policy. d/e 25, pp. 2, 5-6.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" that puts the defendant on notice of the allegations. Fed. R. Civ. P. 8(a)(2), see also Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002). The Court accepts all well-pled facts alleged and draws all possible inferences in the plaintiff's favor. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008). While the Court accepts "the facts alleged as true," the Court need not accept "conclusions, opinions or rumors." United States v. Barnes, 909 F.2d 1059, 1072 (7th Cir. 1990); St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 633 (7th Cir.2007) ("Unsupported conclusions of fact [] need not be

accepted as true."). "[W]here the plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion." Powe v. City of Chicago, 664 F.2d 639, 650 (7th Cir. 1981). But that allegation must amount to more than a "threadbare recital" of the elements of the Plaintiff's claim—Plaintiff must "adequately connect specific defendants to illegal acts." Orr v. Shicker, 147 F.4th 734, 741 (7th Cir. 2025) (internal citations omitted). Plaintiffs must plead facts sufficient to "nudge[] their claims across the line from conceivable to plausible[.]" Twombly, 550 U.S. at 555.

## III. ANALYSIS

The Court now assesses whether Plaintiff's First Amended Complaint cures the defects described in the Court's Order and Opinion (d/e 16) granting Defendants' Motion to Dismiss. The Court already held that the IDOC's written use of force policy is not unconstitutionally vague. d/e 16, p. 9. As Plaintiff has not disputed that finding, the Court has no cause to reopen it. d/e 17, ¶ 10.

Plaintiff's assertions closely resemble those in Nolan v. Wilks, 2024 WL 6861681 (C.D. Ill. Jan. 24, 2024) and Richardson v. Brookhart, 2023 WL 3486973 (C.D. Ill. May 15, 2023). Given that Nolan, Richardson, and the instant case were all filed by Plaintiff's counsel in this district, close comparison is in order. Like Plaintiff, Nolan and Richardson were corrections officers allegedly terminated under the same "unspoken, unwritten arbitrary rule[]" that "employees who use force against an inmate should be seriously disciplined and discharged, due to [IDOC leadership's] view that force should never be used against inmates." Nolan, 2024 WL 6861681, at *3; Richardson, 2023 WL 3486973, at *1.

Both cases proceeded largely as Plaintiff's has: Nolan and Richardson submitted identical complaints that Defendants moved to dismiss for want of allegations sufficient to elevate the claim from conceivable to plausible. In Nolan, the Defendants agreed to let Nolan amend his complaint, while the court dismissed Richardson's claim before granting him leave to refile it. Nolan, d/e 9-10; Richardson, d/e 12.

Nolan's amended complaint added largely the same evidence that Plaintiff has alleged—namely, that government officials adopted

policies that led to less discipline for inmates, and provided quotes from a police union and a state representative allegedly attesting to that effect. Nolan, d/e 10, ¶¶ 15-19. Though not especially clear, Nolan appeared to argue that the IDOC Director's "actions" caused a shift toward an "anti-law enforcement, criminal-centered environment." Id. at ¶ 15. This shift either directly caused or indirectly permitted the unwritten policy that "force should never be used against inmates." Nolan, d/e 10, ¶ 22; Richardson, d/e 15, ¶ 21.

The Defendants in Nolan submitted a second motion to dismiss, arguing that the newly added quotes from the police union and state representative still did not amount to facts sufficient to state a claim for relief. Nolan, d/e 17. The Court disagreed, citing (1) Nolan's claim that the employment review board stated that he was justified in his use of force despite later terminating him therefor; (2) Nolan's detailed allegation that other IDOC employees were terminated under the same unwritten policy; and (3) the quote from the police union describing how IDOC has shifted "placat[ing] social justice advocates at the expense of accountability for criminal

behavior." Nolan, 2024 WL 6861681, at *2-3. The second and third facts were not part of his original complaint. Nolan, d/e 1.

Plaintiff's First Amended Complaint is nearly identical to those in Nolan and Richardson but for ascribing a larger role to Illinois Governor J.B. Pritzker. That is, where Nolan and Richardson alleged that the IDOC's shifting policy on use of force came about through the "actions" of the then-IDOC Director, Plaintiff attributes this shift to Governor Pritzker's "focus" of "protecting inmates from any type of force." d/e 17, ¶ 11. Plaintiff also added the same quotes from the police union and the state representative cited in Nolan and Richardson. Id. at ¶¶ 12-15. Those quotes are discussed in greater detail below.

The collective records from these cases make clear that the allegations in Plaintiff's complaints were present in Nolan, in which the Court denied the defendants' motion to dismiss, and absent in Richardson, which the Court granted defendants' motion to dismiss. Nolan, 2024 WL 6861681, at *3; Richardson, 2023 WL 3486973, at *3. In other words, Plaintiff's counsel had the benefit of the Nolan and Richardson decisions before filing both the original and amended complaints in the instant case. The Court therefore

assesses Plaintiff's First Amended Complaint against those in Nolan and Richardson.

Again, the three key facts that allowed Nolan to avoid dismissal of his amended complaint were (1) Nolan's allegation that "management" acknowledged he was "justified" in his use of force despite his being terminated therefor; (2) that Nolan specifically alleged that other IDOC employees were terminated under the alleged unwritten policy; and (3) the quote from the police union. Nolan, 2024 WL 6861681, at *2-3. Plaintiff replicated those allegations in his First Amended Complaint (though the allegation that "the administration" knew he did not violate written policy was also part of Plaintiff's original complaint). d/e 17, ¶¶ 12, 19; d/e 1, ¶ 21.

This Court respectfully disagrees with the Nolan Court that these allegations are sufficient to state a claim beyond the level of speculation. Nolan, 2024 WL 6861681, at *2-3. First, Plaintiff alleged that "the administration" acknowledged that Plaintiff had "fully adhered to" the use of force policy. d/e 17, ¶ 21. But Plaintiff does not clarify who is included in "the administration," or when or how they acknowledged this, before concluding that the individual

Defendants decided to discipline Plaintiff. Id. By contrast, Nolan's correlative assertion was materially more informative in that he pled a verbatim recitation demonstrating who made the statement and when. Nolan, d/e 10, ¶ 12 ("In the employee review board hearing management stated that 'Lt. Nolan was 100% justified for the use of force.'").

The only other use of "administration" in Plaintiff's First Amended Complaint is a reference to the "administration" of Governor Pritzker, which Plaintiff has separately alleged is responsible for the unwritten policy of disciplining officers for any use of force. d/e 17, ¶ 11. Plaintiff's assertion that "the administration" acknowledged his compliance with the written use of force policy therefore means one of two things: either (1) the Governor's administration agreed that Plaintiff complied with the written policy; or (2) more likely, that Plaintiff intended to refer to the administration of the IDOC, in which case the assertion means that IDOC administration admitted to Plaintiff that it was expressly disregarding its own written policy in order to terminate him. d/e 17, ¶ 21. Accepting this as true, Plaintiff has neither sued the IDOC nor alleged that the IDOC administration attended the

employee review board hearing. This assertion—one of the few factual allegations pled to support the presence of an unwritten policy—therefore fails to "connect specific defendants to illegal acts." Orr, 147 F.4th at 741.

Accordingly, the Court is left to guess as to (1) whether "the administration" refers to that of Governor Pritzker or the IDOC, or impliedly the individual Defendants that could be viewed as part of the IDOC administration (Hughes as the Acting Director and Escamilla as the Chief of Investigations and Intelligence); and, relatedly, as to (2) how "the administration" could have communicated to Plaintiff its "underst[anding]" that he complied with IDOC's written use of force policy. d/e 17, ¶ 21. While the Court must resolve inferences in favor of Plaintiff, the Court need not engage in speculation to help Plaintiff state a claim. Pinkett v. First Citizens Bank, 2010 WL 1910520, at *2 (N.D. Ill. May 10, 2010) ("The Court will not engage in speculation when resolving a motion to dismiss.").

The second key fact that helped Nolan avoid the dismissal of his amended complaint was his detailed description of other officers having been disciplined for use of force despite complying with the

written policy. Nolan, 2024 WL 6861681, at *3. That detail is absent from Plaintiff's First Amended Complaint, which states only that "a number" of other officers have been so disciplined. d/e 17, ¶ 19. While detailed factual allegations are not required to survive a motion to dismiss, a lack of detail makes it harder for the Court to find a plausible claim. Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010) ("[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together.").

Finally, the third key fact that helped Nolan avoid the dismissal of his amended complaint was the police union's quote describing how IDOC has created an environment in which "offenders are no longer concerned about being punished for their violent acts." Nolan, 2024 WL 6861681, at *3; d/e 10, ¶ 16. Accepting this quote as true, which the Court must do at this stage, whether inmates are "concerned about being punished" for violence has no bearing on whether the IDOC has an unwritten policy of disciplining officers for "any" use of force. d/e 17, ¶¶ 13, 11. The Court recognizes the possibility that Plaintiff intended to imply that excessive discipline of corrections officers has emboldened inmates

to act out with impunity. But the relevant quote was part of a police union president's lament of inmates' easy access to fentanyl, not a discussion of IDOC's use of force policy. Greg Bishop, Fentanyl being mailed to Illinois state prison inmates, Lake & McHenry County Scanner, Sept. 10, 2022; d/e 17, ¶ 13 (Plaintiff describing the quote as referring to "the rules governing <u>prisoner</u> actions"); <u>Milwaukee Police Ass'n v. Flynn</u>, 863 F.3d 636 (7th Cir. 2017) (In ruling on a motion to dismiss, the Court "may take into consideration documents incorporated by reference to the pleadings and also may take judicial notice of matters of public record.") (internal quotations omitted). Likewise, the quote from Illinois State Representative C.D. Davidsmeyer discusses closing prisons as part of a broader campaign to ignore "personal responsibility" for "people committing crimes." d/e 17, ¶ 15. These quotes decry a pattern of insufficient discipline for inmates rather than demonstrate a pattern of unconstitutional discipline for corrections officers.

Accordingly, Plaintiff's First Amended Complaint is more akin to Richardson's original complaint (which did not state a claim for relief) than it is to Nolan's amended complaint (which did state a

claim for relief). Richardson, 2023 WL 3486973, at *3[1]; d/e 1; Nolan, 2024 WL 6861681, at *3; d/e 10.

The crux of Plaintiff's claim is the existence and application of an unwritten use of force policy. But the allegations offered to support the existence of such a policy—that "the administration" knew Plaintiff complied with the written use of force policy, that other officers were disciplined in the same manner as Plaintiff, that a police union and state representative disagreed with IDOC's policy changes—are not sufficiently clear, detailed, or relevant to nudge Plaintiff's claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570; d/e 17, ¶¶ 21, 19, 12-13, 15. Accordingly, the Court holds that Plaintiff's First Amended Complaint does not present a story that raises a right to relief above a "speculative level." Twombly, 550 U.S. at 545.

---

[1] The defendants in Richardson did not file a second motion to dismiss after Richardson amended his complaint to be nearly identical to Nolan's amended complaint, which ultimately avoided dismissal. Richardson, d/e 16; Nolan, 2024 WL 6861681, at *3.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (d/e 25) is GRANTED.

**ENTERED: October 5, 2026.**
**FOR THE COURT:**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**